UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| STEPHEN J. TAYLOR, )<br>  )<br>  Plaintiff, )<br>  vs. )<br>  )<br>DETECTIVE KNOX, )<br>  )<br>  Defendant. ) | No. 1:08-cv-1032-SEB-JMS |

**Entry Discussing Motion for Summary Judgment**

Stephen Taylor's conviction for child molestation in an Indiana state court was based in part on evidence that his DNA matched that found in the sweatband of a Chicago Bulls baseball cap left at the scene of the molestation of a boy in a Zionsville park. Taylor brings this lawsuit pursuant to 42 U.S.C. § 1983 claiming that Detective Robert Knox of the Zionsville Police Department obtained the warrant to obtain his DNA for testing in violation of his Fourth Amendment rights by giving false testimony to the court that issued the warrant. Taylor also argues that Knox violated his rights by seizing property that had been seized by Plainfield police officers when Taylor was arrested. Knox has moved for summary judgment on Taylor's claims.

**Standard of Review**

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. Rule 56(c). Where "[t]here are no genuine issues of material fact and the dispute primarily concerns a question of interpreting a statute and applying it to a specific set of facts" the dispute is "properly resolved on a motion for summary judgment." *LTV Steel Co., Inc. v. Northwest Engineering & Const., Inc.*, 41 F.3d 332, 334 (7th Cir. 1994). Thus, the relevant law concerning plaintiff's claims is pivotal. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."). Even if no genuine issue of material fact is present, summary judgment is not appropriate unless the governing law supports the moving party's position. Fed.R.Civ.P. 56(c) (requiring the moving party to show that it "is entitled to judgment as a matter of law"); *see also Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir.1989) ("The

presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law.").

## Facts

On June 27, 2006, Zionsville Police Department detectives Robert Knox and Chuck White were called to a town park to investigate a report that a man molested an eight-year-old boy and gave him $100. The man had fled, but left behind a Chicago Bulls baseball cap and the $100 bill given to the boy. The man was described by witnesses as tall and slender with light brown hair. The cap was sent to a laboratory for analysis. The lab reported that a DNA sample had been extracted from the sweatband of the cap.

On August 31, 2006, Plainfield police officers arrested Taylor at a town park. Taylor was carrying a large amount of cash, including thirteen $100 bills and a note that read, "I'll give you $100 if you let me suck your dick. Please!" Plainfield officers seized the cash, the note, a green bicycle, and a hand-held video game and notified Detective Knox of the arrest.

Later that day, Knox and other officers interviewed Taylor's parents at their home in Indianapolis. Taylor's mother told the officers that he liked to wear sports-related clothing, including a Miami Dolphins and a Chicago Bears cap. The officers showed Taylor's parents a photograph of the Chicago Bulls cap that was found at the scene of the molestation. Taylor's mother told the officers that she had never seen him wear a cap like that and that he would not like the style. She states that she told the officers that she and her husband would not hear from Taylor for days at a time. She told the officers that Taylor might have gone to Brown County on his bicycle. On reflection, she testified that she thinks she meant to say Brownsburg, not Brown County, because the family has relatives in Brownsburg and Plainfield. The officers also visited Taylor's grandmother's house, interviewed her, and examined the room she identified as Taylor's. The room contained no personal belongings or clothing, and the grandmother also stated that Taylor would be gone for as long as a week.

The prosecuting attorney applied to the Boone Superior Court for a search warrant to obtain a DNA sample from Taylor. Knox testified in support of the application. He recounted the facts of the offense, the recovery of the Bulls cap, the arrest of Taylor with the cash and note, and his physical description. Knox explained that Taylor's family told detectives that he rides his bicycle everywhere he goes, that he is sometimes gone for days at a time, and that he has gone as far as Brown County on his bicycle. Knox also testified that Taylor's family stated that he likes to wear baseball caps with sports team insignias and that his favorite caps were Miami Dolphins and Chicago Bears. Knox also testified that other police agencies were looking for a suspected child molester who was riding a red bicycle and that the green bicycle Taylor was riding when he was arrested had recently been repainted from red.

At the conclusion of the hearing, the court authorized a warrant for the search of Taylor's person to obtain a DNA sample. Knox and another detective served the warrant on Taylor at the Hendricks County Jail and used a kit to take a DNA sample from the inside of Taylor's mouth. The laboratory analyzed Taylor's DNA sample and concluded that Taylor's DNA matched the DNA taken from the baseball cap.

Taylor's property seized by the Plainfield police officers including the cash, the note, the video game, a knife, a water bottle, razors, and a pepper spray canister, was later taken into custody by the Zionsville Police Department. At Taylor's trial, the cash, the note, and the video game were introduced into evidence and remain in the custody of the Boone Superior Court. The other items, including the bicycle, remain in the custody of the Zionsville Police Department.

## Discussion

Taylor argues that Knox violated his Fourth Amendment rights by testifying falsely in support of the search warrant and by taking possession of his property that had been in the custody of the Plainfield Police Department.

### A.     Testimony in Support of Search Warrant

Taylor alleges that Knox violated his Fourth Amendment rights by providing what he alleges to be false testimony at the hearing in support of the search warrant. An officer applying for a search warrant violates the Fourth Amendment if he knowingly or intentionally, or with reckless disregard for the truth, makes false statements to the judicial officer, and those false statements were necessary to the judicial officer's determination of probable cause. *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985). "A 'reckless disregard for the truth' is demonstrated by showing that the officers entertained serious doubts as to the truth of their statements, had obvious reasons to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts they knew would negate probable cause." *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003); *see also Whitlock v. Brown*, __ F.3d __, 2010 WL 624307 (7th Cir. Feb. 24, 2010).

Taylor bases his claim on the following allegedly false statements Detective Knox made at the hearing regarding the search warrant: (1) that Taylor liked to wear baseball caps with sports team insignias, (2) that Taylor's family explained that he would be gone for days at a time, (3) that Taylor rode his bicycle to Brown County, and (4) that Taylor's crimes was similar to crimes in other counties. Taylor also argues that Detective Knox failed to disclose to the court evidence that would have negated the existence of probable cause.

   1.     *Testimony regarding baseball caps*

At the hearing, Knox testified that Taylor's family "advised his favorite caps were Miami Dolphins, Chicago Bears and again the hat that was recovered in the Zionsville park that was Chicago Bulls." Taylor asserts that this statement was false because his mother did not identify the Bulls cap as belonging to him and told the officers that she had never seen him wear a cap like that and opined that he would not like that style. She also

3

confirmed that he liked to wear sports-related clothing, including a Dolphins cap and a Bears cap. The court finds that Knox's testimony was substantially consistent with the information provided to him by Taylor's mother. While Taylor's mother did not identify the Bulls cap as belonging to Taylor, Detective Knox did not testify that she did. Accordingly, Detective Knox's testimony on this fact was not false and did not violate the Fourth Amendment.

       2.    *Testimony that Taylor would be gone for days at a time and that he went to Brown County on his bicycle*

Taylor next challenges Knox's testimony that Taylor's family told him that Taylor "rides his bicycle everywhere he goes and sometimes he's gone for days at a time, and long, long distances. He's went as far as Brown County on his bicycle they were able to advise." In support of his conclusion that this testimony was false, Taylor presents the declaration of his mother who states: "I told the officers that Stephen might have gone to Brown County on his bicycle. However, I also specifically told he officers we could not positively say where he did or did not go on his bicycle since we only saw Stephen two or three times a week and he didn't check in with us about where he went." Taylor's mother also states "While we, in essence, told the officers that we would not hear from Stephen for days at a time, this was because Stephen did not live with us but lived with his grandmother nearby. We never told the officers that Stephen would be 'gone' for days at a time on his bicycle."

The court finds that this testimony was not misleading or false. First, Knox's testimony that Taylor would be "gone" for days at a time is a fair conclusion from his mother's statement that she would not hear from Taylor for days at a time. *See Suarez v. Town of Ogden Dunes*, 581 F.3d 591, 597 (7th Cir. 2009) (presence of cars on the street and in the driveway and the fact that no one was in the street, outside the house or behind the house provided ample basis for officer's claims that the teenagers "retreated into the house"). Second, Taylor's mother admits that she told officers that he might have gone to Brown County on his bike. She now adds that she could not "positively say where he did or did not go on his bicycle since we only saw Stephen two or three times a week and he didn't check in with us about where he went." Because it is undisputed that Taylor's mother told Knox that Taylor might have gone to Brown County, Knox had no reason not to believe this statement and could testify as such. *See United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) (even if officer provided false information based an informant's tip, there was no reason that the officer had reason to doubt the informant's statement). Accordingly, Knox's testimony on this issue did not violate the Fourth Amendment.

       3.    *Testimony that Taylor's crime was similar to crimes in other jurisdictions*

Taylor argues that Knox falsely testified that Taylor "fit the description" of individuals described in molesting reports in other counties. Knox did not testify that Taylor "fit the description" of other suspects, but testified that suspects in Fishers and Greenwood were similar to him. Knox testified that the Fishers Police Department informed him that the description of the suspect in their case was similar and was seen in a city park riding a red bicycle. He also testified that the suspect in the Greenwood case was riding a red bicycle and that Taylor's bicycle appeared to have originally been red and was repainted green.

Knox's testimony that the suspect in Fishers was similar to Taylor was not false. That suspect was described was between 5'8" and 5'11" tall, weighed between 160 and 180 pounds and had dark hair and a goatee. Taylor is 5'10" tall, weighs 150 pounds, and has brown hair. These descriptions are close enough to conclude that Taylor's description was similar to that of the Fishers suspect. Knox did not testify that Taylor's description was similar to that of the suspect in any of the other cases. With respect to the Greenwood case, Knox testified that the Greenwood suspect was seen riding a red bicycle. Again, this testimony was not given in violation of the Fourth Amendment.

      4.     *Omission of exculpatory evidence*

Taylor argues that Knox failed to disclose to the state court evidence that would have negated probable cause. Specifically, he argues that Knox should have specifically told the state court that Taylor's mother did not identify the Bulls cap as belonging to Taylor and that Taylor did not physically match descriptions of the fleeing suspect given by witnesses.

Knox's failure to testify that Taylor's mother did not identify the cap as his and opined that he would not like that style does not constitute a Fourth Amendment violation. Even if Detective Knox had testified to that effect, it would not have negated probable cause. Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed. *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003); *see also Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983).Taylor did not live with his mother and she saw him only a couple of days a week. The fact that she never saw him wear the Bulls cap does not make it less likely that he owned it and therefore does not negate probable cause.

Taylor also argues that Knox withheld information regarding the witness descriptions of the suspect that would have negated probable cause. Witnesses described the suspect as "tall, about 6 ft or more . . . [with] brown hair" and "about 6 feet tall [with] light brown hair." Knox testified that the suspect had been described as "tall, slender, light brown hair, wearing a red shirt and either blue jeans or, or tan pants." He then described Taylor as "five ten, approximately a hundred and sixty pounds and brown hair." Knox's failure to state specifically that witnesses had estimated Taylor's height to be six feet is not significant to the probable cause determination because Knox accurately testified that he was described as tall.

**B.**    **Possession of Property Seized when Taylor was Arrested**

When they arrested Taylor, Plainfield police officers seized the cash, the note, a green bicycle, and a hand-held video game. Knox then took possession of this property when the Boone Superior Court issued the warrant for Taylor's arrest for the incident in the Zionsville Park. This action did not violate Taylor's Fourth Amendment rights because the items were lawfully seized by the Plainfield police and no further action was necessary to transfer them to Knox and the Zionsville police.

5

The Indiana Court of Appeals and another judge of this court have both previously determined that the items were seized properly by the Plainfield police. Taylor moved to suppress the evidence seized by the Plainfield officers at his trial. The state trial court denied his motion to suppress, finding that the arrest was supported by probable cause and the Indiana Court of Appeals affirmed. *Taylor v. State*, 891 N.E.2d 155, 160 (Ind. Ct. App. 2008). Further, in his civil rights lawsuit filed against the Plainfield officers, Judge Young of this court agreed that the items were seized properly. *Taylor v. Stewart*, No. 1:08-cv-527-RLY-DML.

Because these items were seized properly, there was no Fourth Amendment violation when they were transferred to the Zionsville Police Department. *See Gullett v. United States*, 387 F.2d 307, 308 n.1 (8th Cir. 1967) ("The fact that evidence was obtained by state officers and is now being used in a federal prosecution is, of course, immaterial, provided the obtaining of the evidence was not in violation of the defendants' immunity from unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States.").

## Conclusion

Based on the foregoing, the court finds that Knox did not violate Taylor's rights in the fashion claimed in this case.  Accordingly, Knox's motion for summary judgment (dkt 16) is **granted.**  Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/12/2010

*[signature: Sarah Evans Barker]*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana